IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **DAWN KOCH** | § | |
| | § | |
| V. | § | CIVIL ACTION NO. <u>5:20-cv-1363</u> |
| | § | |
| | § | JURY TRIAL |
| **S&G DIALYSIS d/b/a** | § | |
| **SANKAR NEPHROLOGY** | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

TO THE HONORABLE DISTRICT JUDGE:

Comes Now DAWN KOCH, Plaintiff herein, complaining of Defendant S&G DIALYSIS d/b/a SANKAR NEPHROLOGY and files this Plaintiff's Original Complaint.

**I. PARTIES, JURISDICTION AND VENUE**

1. Plaintiff Dawn Koch ("Plaintiff" or "Koch") is currently a citizen and resident of Bexar County, Texas and is a former employee of Defendant. Plaintiff worked for Defendant in San Antonio, Bexar County, Texas and all relevant events occurred in San Antonio, Bexar County, Texas, within this federal district.

2. Defendant Sankar Nephrology Group, LLC, is a domestic limited liability company registered in the State of Texas and doing business in San Antonio, Bexar County Texas. Defendant's maintains and does business in Bexar County, Texas and its main office is located in Fort Worth, Texas. Defendant may be served with service by serving its Texas registered agent, as follows: Ponniah Sankar, 1000 W. Cannon St., Fort Worth, Tx. 76104. However, a waiver request is first being sent to Defendant.

1

3. Should Plaintiff learn that the business is owned by a different corporation or other business entity, then the Plaintiff would request leave to add as a proper party, substitute the true name and/or to serve said corporation or business entity.

4. Venue is proper in the Western District of Texas, and in that, all or a substantial part of the events or omissions giving rise to this cause of action occurred in the Western District of Texas (Bexar County). Moreover, venue is proper in the Western District of Texas in that Defendant conducts business in San Antonio, Bexar County, Texas and within this district.

5. This Court has jurisdiction pursuant to a federal question, 28 U.S.C. section 1331, Title VII of the Civil Rights Act of 1964, 42 U.S.C. sec.2000 et seq.; ADEA 29 USC Sec. 623 et seq; and ADA 42 USC Sec. 12212 et seq. Moreover, this court has supplemental jurisdiction of the state claims arising under the Texas Labor Code. Plaintiff is entitled to attorneys' fees and costs pursuant to 42 U.S.C. sec.1981, 1981(a), 42 U.S.C. sec.1988.

## II. MISNOMER/MISIDENTIFICATION

6. In the event any parties are misnamed or are not included herein, it is Plaintiff's contention that such was a "misidentification," "misnomer" and/or such parties are/were "alter egos" of parties named herein. Alternatively, Plaintiff contends that such "corporate veils" should be pierced to hold such parties properly included in the interest of justice.

## III. RESPONDEAT SUPERIOR

7. Employees involved in this cause of action were, at all times described herein, employees and vice-principals of defendant(s) and were at all times acting in the course and scope of that employment. Accordingly, defendant(s) are liable for such conduct under the doctrine of *Respondeat Superior*.

8. At all times relevant to this lawsuit, Defendant, its agents and employees, was/were aware of the acts and omissions alleged herein, and through its authorized employees, agents, officers, executives, or representatives, knowingly formulated, participated in, and/or approved the wrongful and illegal conduct complained of herein.

### IV. PROCEDURAL STATEMENT

9. Plaintiff has satisfied all administrative conditions precedent to filing suit herein, including, but not limited to, filing the administrative complaint/Charge of Discrimination within 180/300 days of discovering the discriminatory act as required under state and/or federal law. Plaintiff has been issued a Right to Sue by the EEOC and files her petition within 90 days of receipt of same.

### V. FACTS

10. Plaintiff pleads a cause of action against Defendant for violation of Title VII of the Civil Rights Act of 1964, the Age Employment in Discrimination Act, the Americans With Disabilities Act and/or the Texas Labor Code. Plaintiff has asserted alternate theories of discrimination, harassment and/or retaliation, including discrimination, harassment and/or retaliation based on Plaintiff's race, national origin, age, and/or disability.

- Plaintiff is a forty-eight (48) year old Anglo-white Caucasian female.

- Plaintiff was hired by Defendant on or about 2008 as a Senior Level Dietitian in Defendant's dialysis clinic known as San Saba Kidney Center in San Antonio, Texas.

- Plaintiff was terminated on or about March 25, 2020.

- During Plaintiff's twelve (12) years of employment, from 2008 to March 25, 2020, Plaintiff had performed her job duties in a satisfactory manner.

3

- Plaintiff had no prior discipline or write ups involving and/or issues with Plaintiff's job performance.

- Plaintiff was not allowed Defendant's progressive discipline process.

- Plaintiff has a diagnosis of multiple sclerosis. She had the added personal concern of being at a higher risk. She had a compromised immune system, having Multiple Sclerosis and also other health risks as she had Supraventricular tachycardia (SVT) as well as a history of cancer.

- On or about March 17, Plaintiff informed Defendant of her possible COVID (Coronavirus) related disabilities.

- Defendant had a practice to hire persons of Asian descent.

- Defendant did not give Plaintiff any legitimate reason or justification for terminating Plaintiff.

- Plaintiff would show any reason now given by Defendant for terminating Plaintiff is false and a pretext to hide unlawful discrimination / retaliation.

- Plaintiff would show that she was replaced by a person outside her protected class.

11. Plaintiff had been working as a senior level dietitian in the dialysis clinic, PPG/SNG San Saba Kidney Center for 12 years.  She took a vacation with her daughter over her spring break, March 7-14, 2020.  When they returned from their vacation, the Coronavirus pandemic had rapidly evolved.  The federal and local government, the CDC and the dialysis ESRD regulating body were then all recommending all people able to work from home to do so.

12. Upon returning to work, Monday, March 16, 2020, Plaintiff immediately asked the Facility Administrator and direct supervisor, Herlinda Arnold, what protocols and procedures had been implemented while Plaintiff was away.  However, none were provided. Plaintiff pointed out the recommendations laid out by the federal and local government and the CDC and asked if they

would and could be allowed to work from home. She appeared frazzled and said not right now and expressed she didn't "know what was going on" and only said that the doctors were wanting all patients to receive face masks, but that corporate had denied them. She was waiting for corporate.

13. The next day, March 17, 2020, after still no direction or policy implementation, out of significant safety concerns for the health and safety of the patients and because of her own medical condition and health risks, Plaintiff Koch sent an e-mail to the corporate upper-management, Kinam "Kim" Martin, COO, Jo Jordan, Human Resources Dir. and Regina Bryson, Regional Dir., making the suggestion that ancillary/support staff be allowed to work from home. This suggestion was made to help mitigate patient and floor staff exposure, including herself, and risk of the Coronavirus. The request was first granted then quickly denied.

14. Upon learning she had made this request, Plaintiff's direct supervisor, Herlinda Arnold, berated Plaintiff Koch for contacting upper management, despite having already sought direction to no avail from her the day prior. Koch was told she was "selfish", as Arnold erroneously thought Plaintiff Koch had only made the request for herself to work from home.

15. In the absence of any policy and a business as usual environment, Plaintiff Koch continued to work at the clinic; However, she took it upon herself to take added safety precautions, wearing her own N95 mask from home, gloves, washing her hands frequently and properly and either fasting or eating alone in her car. Plaintiff worked 40+ hours that week, March 16-20.

16. Then, on Monday, March 23, 2020, while still required to report to work directly and after learning the night before that she might have had a chance exposure during her vacation trip 9+ days before, around noon, she started to wonder if symptoms she had believed were allergies and

5

a kidney infection could rather be symptoms of the Coronavirus. Plaintiff Koch then immediately informed both her direct supervisor, Herlinda Arnold, and her upper-management.

17. Herlinda's first response was to once again get angry with Plaintiff Koch and she stated something to the effect of "You can't go home. Now you'll just have to wait to see what they (meaning corp. management) say". She threatened Plaintiff Koch, suggesting she "just go… transfer somewhere". Later, Herlinda seemed to better compose herself and she had a floor staff member take Plaintiff Koch's temperature. Plaintiff had no fever, it was low at 97 degrees and Herlinda said, "That's not good either". She then told Plaintiff to go to her PCP for a Coronavirus test.

18. Later that day, Herlinda texted Plaintiff Koch and stated the company doctor, the Medical Director, Dr. Robert Szewc, still wanted to conduct the monthly Quality Assurance meeting and to "stand by" to report by phone. Instead of receiving a call for that meeting, Plaintiff instead received a call from the Dr. Szewc, Kinam Martin (COO), Regina Bryson (Regional Dir.) and Herlinda Arnold (Facility Administrator). Dr. Szewc asked if Plaintiff Koch had received education regarding the virus and she answered honestly, replying "not by work, only by news outlets." Plaintiff's direct supervisor, Herlinda Arnold, got angry and raised her voice saying, "No. That's not true." However, it was true and there was no direction given to Plaintiff on when to call in from home, but not come into work. Referring to her e-mail suggesting support staff be allowed to work from home for patient safety, Kinam Martin made her feelings abundantly clear, chastising Plaintiff, saying something to the effect of, "How dare you even make any suggestions to us on how we handle the situation and ask to work from home. It is not your place".

19. After 12 years of dedicated, faithful service, Plaintiff was terminated by phone two days later, March 25, 2020, by HR Director Jo Jordan and Regional Director Regina Bryson. Both expressed their apologies. Plaintiff Koch was sobbing and pleading for her job and they apologized again. Ms. Jordan ended her phone call and Regina remained on the line with Plaintiff. Regina once again apologized and said it was not her decision. Plaintiff said to Regina that she was a good dietitian and Regina agreed and said, "I know you are. I've seen your work". Plaintiff Koch asked her to please advocate for her and Regina said "Believe me I have. This is out of my hands". Plaintiff stated, "They're just trying to cover themselves" to which Regina agreed and said, "You're right. That's exactly what they're doing. It's a legal thing". On another phone call, when Plaintiff got her test results back that she was negative for the Coronavirus, Regina said she wished she was the owner of the company so she could keep Koch and that losing her was a big loss.

20. After the phone call when she was terminated, Plaintiff Koch called the prior Medical Director, Dr. Srinath Tamirisa, who had just stepped down as Medical Director in February & was still one of two of the main nephrologists. When Plaintiff Koch first began explaining what had happened, he said, "Don't worry about it Dawn, you're fine. All these days have already passed and you're okay". Plaintiff then explained that they had just fired her. Tamirisa said, "No! How can they do that? Dawn, you should have come to me. Why did you say anything to them?". Then, he answered his own question and said, "Because you are honest. But you are dealing with people who are not honest!". He said he would call around and try to help her.

21. Plaintiff's concerns for the health and safety of the patients, staff and because of her own medical condition and age and because of requesting she work from home, she was terminated.

7

She was also one of two senior employees over 40 who were terminated in violation of the Age Discrimination in Employment Act. Her medical issues and disability and/or perception of disability were a basis for her termination. Plaintiff has a diagnosis of multiple sclerosis. She had the added personal concern of being at a higher risk. She had a compromised immune system, having Multiple Sclerosis and also other health risks as she had Supraventricular tachycardia (SVT) as well as a history of cancer. The company retaliated against Plaintiff for raising complaints about the procedures related to her own health and disabilities and that of the patients because the company had failed to create policies or implement procedures to ensure patient safety. Attempting to make Plaintiff Koch their scapegoat, they terminated her.

## VI.

## DISCRIMINATION AND RETALIATION IN VIOLATION OF AGE DISCRIMINATION IN EMPLOYMENT ACT, ADEA, 29 USC. SEC. 623 ET SEQ. AND IN VIOLATION OF CHAPTER 21 OF THE TEXAS LABOR CODE

22. Plaintiff incorporates the factual allegations set forth above and set forth herein as if set forth verbatim.

23. Plaintiff alleges that because of Plaintiff's age (48), Defendant discriminated against Plaintiff as set out herein and/or retaliated against her after she raised safety concerns for patients and herself based on her age, medical condition and/or disabilities..

## VII.

## DISCRIMINATION AND RETALIATION AND FAILURE TO ACCOMMODATE IN VIOLATION OF AMERICANS WITH DISABILITIES ACT, ADA, 42 USC SEC. 12212 ET SEQ. AND IN VIOLATION OF CHAPTER 21 OF THE TEXAS LABOR CODE

8

24. Plaintiff incorporates the factual allegations set forth above and set forth herein as if set forth verbatim.

25. In the alternative, Plaintiff alleges that because of Plaintiff's disability, medical condition and/or perceived disability and/or medical condition, Defendant discriminated against Plaintiff as set out herein and/or retaliated against her after she raised safety concerns for patients and herself based on her age, medical condition and/or disabilities.

26. Moreover, it is asserted Plaintiff was entitled to legal protections under the Americans With Disabilities Act because it would not be and was not safe for her to work at her normal job site because of a medical condition that made her more vulnerable to COVID-19. The Defendant was required to provide Plaintiff with a reasonable accommodation, such as allowing her to work remotely or changing the configuration of the workplace. Rather than engaging in the interactive process or accommodating the Plaintiff, she was wrongfully terminated. In addition to the ADA, Plaintiff herein asserts any COVID related rules, statutes and/or guidelines for purposes of this proceeding.

26. These acts by the Defendant constitute unlawful intentional discrimination and/or retaliation and entitles Plaintiff to recovery of damages and/or punitive damages.

## VIII. JURY DEMAND

27. Plaintiff requests trial by jury on all claims.

## IX. DAMAGES

28. Plaintiff alleges that as a direct and proximate result of the conduct and/or omissions on the part of the Defendant, she is entitled to recover at least the following legal damages:

 - Lost wages, past and future

- Compensatory Damages, including Mental Anguish, emotional pain, suffering, inconvenience, mental anguish, damage to her reputation and character based on the termination and loss of enjoyment of life suffered in the past, and which, in all reasonable probability, which will be suffered in the future;

- Pecuniary losses; liquidated and punitive damages

- Reasonable attorney fees, expert fees and costs.

- Based upon the above enumerated damages, the Plaintiff pleads for actual damages for the above damage elements in an amount the jury deems reasonable but not to exceed SEVEN HUNDRED AND FIFTY TOUSAND DOLLARS ($750,000.00).

## X. ATTORNEY FEES

29. Defendant's conduct as described in this petition and the resulting damage and losses to Plaintiff has necessitated Plaintiff retaining counsel. Therefore, Plaintiff seeks all reasonable and necessary attorney fees in this case which would include at least the following:

   a. Preparation and trial of the claim, in an amount the court deems reasonable;

   b. Post-trial, pre-appeal legal services, in an amount the court deems reasonable;

   c. An appeal to the Court of Appeals, in an amount the court deems reasonable;

   d. Making or responding to an Application to the Supreme Court, and attorneys' fees in the event that a petition is granted, in an amount the court deems reasonable; and

   e. Post-judgment discovery and collection in the event execution on the judgment is necessary, in an amount the court deems reasonable.

**PRAYER FOR RELIEF**

Wherefore, Plaintiff requests that on final trial, Plaintiff have judgment against Defendant as follows:

1. Judgment against Defendant for Plaintiff's actual damages, including lost wages, bonuses, salary and benefits (both back pay and front pay), in an amount to be determined;

2. Judgment against Defendant for compensatory damages for the maximum amount allowed by law;

3. An order that Defendant take such other and further actions as may be necessary to redress Defendant's violation of the Civil Rights and any other applicable claims including reinstatement, if warranted or feasible;

4. Pre-judgment and post-judgment interest at the maximum amount allowed by law;

5. Costs of suit, including expert's fees and attorney's fees;

6. The award of such other and further relief, both at law and in equity, including injunctive relief and reinstatement, to which Plaintiff may be justly entitled.

Respectfully submitted,

PONCIO LAW OFFICES
A Professional Corporation
5410 Fredericksburg Road, Suite 109
San Antonio, Texas 78229-3550
Telephone:    (210) 212-7979
Facsimile:    (210) 212-5880

/s/ Adam Poncio
**ADAM PONCIO**
State Bar No. 16109800
**ALAN BRAUN**
State Bar No. 24054488
abraun@ponciolaw.com

Chris McJunkin
State Bar No. 13686525
cmcjunkin@stx.rr.com
4510 Anthony St.
Corpus Christi, TX  78415
Telephone:    (361) 882-5747
Facsimile:    (361) 882-8926

**ATTORNEYS FOR PLAINTIFF**